**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald A. CROOKS, Defendant–Appellant.**

### No. 95–40211.

United States Court of Appeals,
Fifth Circuit.

April 30, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied June 11, 1996.

---

841(b)(1)(B); and aiding and abetting the possession with the intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. For the reasons assigned we affirm.

## Background

On October 8, 1994 Crooks, a resident of Delaware and a citizen of Guatemala, and Louis Albino crossed the Los Indios Bridge into Brownsville, Texas in a white Mack truck. The truck, owned by Crooks, was driven by Albino. Learning that Crooks and Albino had driven the truck from Guatemala, the Customs Inspectors directed them to the secondary inspection station.[1] Inspector Luiz Perez questioned Crooks and Albino and inspected the interior and undercarriage of the truck.[2] Noticing that the painted rear section of the drive shaft markedly contrasted with the rest of the rusty undercarriage, Perez tapped with a machete on both the rear and forward sections. The rusty section gave a hollow sound; the painted section sounded solid. Perez also noticed that the painted section appeared to have a nonfactory weld and that the bolts securing it were greased and loose.

Thus alerted, Perez began to drill a hole into the painted portion of the drive shaft. As Perez did so, Albino and Crooks watched him nervously and spoke to each other rapidly and in hushed Spanish. Viewing these observations through the prism of his training and experience, Inspector Von Newman concluded that the nervous reaction of Albino and Crooks was caused by Perez's scrutiny of the drive shaft. Perez discovered 1.4 kilograms of cocaine inside the drive shaft. A search of the truck disclosed a quantity of prohibited fruit and a search of Crooks' luggage revealed gasket seals.

The evidence established that Crooks sold used tires and vehicles in Guatemala.[3] Albino assisted in this business. Approximately two months before their arrest, Albino and

Gordon Speights Young, Gaynelle Griffin Jones, Paula Camille Offenhauser, U.S. Attorney's Office, Houston, TX, for United States of America, plaintiff-appellee.

Joseph R. Willie, II, Houston, TX, for Gerald A. Crooks, defendant-appellant.

Before POLITZ, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.

POLITZ, Chief Judge:

Gerald A. Crooks appeals his conviction for conspiracy to import cocaine, 21 U.S.C. §§ 963, 952(a), and 960(b); aiding and abetting the importation of cocaine, 21 U.S.C. §§ 952(a), 960(b)(2) and 18 U.S.C. § 2; conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), and

1. It is standard procedure to route all vehicles from Central America to the secondary inspection station.

2. Crooks informed Perez that he had in his possession about $1400. Albino reported no funds.

3. Crooks' Guatemalan identification card reflects that he is a welder by trade. At trial he testified that he is a fiberglass welder, not a metal welder.

Crooks drove from Delaware to Guatemala. Prior to their departure Crooks shipped the subject white Mack truck to Guatemala, loaded with used tires. Crooks explained this action by noting that Mexican law prohibits the transportation of used tires through its interior. In addition he asserted that shipping the truck saved the expense of renting one in Guatemala. Crooks and Albino sold the tires and one vehicle in Guatemala and then drove the Mack truck through Mexico to Brownsville, Texas.

Albino, who previously had pleaded guilty, testified at Crooks' trial that he alone was responsible for the cocaine in the drive shaft and that Crooks was unaware of its presence. Albino also attested that while in Guatemala he met a stranger in a bar who offered to sell him 1.4 kilograms of cocaine for $2000. He says he purchased the cocaine, put it in the drive shaft, and had a welder named Felipe weld it shut. On cross-examination Albino testified that he did not have a buyer nor did he know anybody who might purchase the cocaine in the United States.

Crooks testified in his defense, describing the nature of his business venture in Guatemala, his reason for shipping the Mack truck to Guatemala, and explaining that he spoke with Albino in hushed tones during the inspection because he feared the inspectors would discover the prohibited fruit. He said that he had no knowledge of the cocaine.

After the defense rested, the government called in rebuttal DEA Special Agent Tony Tamayo who testified that the usual price of cocaine in Guatemala was $5000 per kilogram, or $7500 for the amount in the drive shaft.

*Analysis*

A. Sufficiency of the Evidence

Crooks contends that the evidence is insufficient to support his convictions on the four drug counts. Viewing the evidence in the light most favorable to the verdict, we inquire whether a reasonable trier-of-fact could have found the essential elements of the offenses beyond a reasonable doubt.[4]

The first and third counts of the indictment allege, respectively, a conspiracy to import cocaine and a conspiracy to possess cocaine with intent to distribute. To establish a conspiracy, the government must prove beyond a reasonable doubt that (1) an agreement existed between two or more persons to accomplish unlawful ends, (2) the defendant had knowledge of the agreement, and (3) the defendant voluntarily participated.[5] The agreement may be tacit, and the jury may infer its existence from circumstantial evidence.[6]

Count two alleges importation of cocaine and aiding and abetting its importation. To establish importation the government must prove beyond a reasonable doubt that the defendant participated in bringing a quantity of a controlled substance into the United States knowing that the substance was controlled and that it would enter the United States.[7] Count four alleges possession with intent to distribute, or aiding and abetting the possession with intent to distribute. The essential elements of possession with intent to distribute narcotics are possession, knowledge, and intent to distribute.[8] To establish the aiding and abetting charge the government must prove that the defendant associated with a criminal venture, participated therein, and actively sought its successful conclusion.[9]

We must conclude that the evidence, viewed as a whole and in the light most favorable to the verdict, is readily sufficient to prove the crimes charged beyond a reasonable doubt. Crooks owned the truck and was present when a large quantity of cocaine

4. *United States v. Pruneda–Gonzalez*, 953 F.2d 190 (5th Cir.), *cert. denied,* 504 U.S. 978, 112 S.Ct. 2952, 119 L.Ed.2d 575 (1992).

5. *United States v. Casilla,* 20 F.3d 600 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 240, 130 L.Ed.2d 163 (1994).

6. *United States v. Thomas,* 12 F.3d 1350 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1861, 128 L.Ed.2d 483 (1994).

7. *Casilla.*

8. *Id.*

9. *Id.*

was discovered hidden therein.[10] He was visibly nervous while Perez was drilling into the drive shaft and he offered, at best, a weak if not implausible explanation for shipping the Mack truck to Guatemala.[11] In light of the foregoing, a reasonable jury could infer that Crooks was responsible for the cocaine in the drive shaft based on: (1) the discovery of gaskets in Crooks' luggage; (2) the recent welding of the drive shaft; (3) Crooks' identification card listing his occupation as a welder; (4) his possession of nearly $1400 in cash; (5) Albino's pauper status when arrested; (6) Albino's testimony that he did not have a source for the resale of the cocaine despite his insistence that he had engaged in the drug crimes without Crooks' knowledge; and (7) the discrepancy between the amount Albino said he paid for the cocaine and the going rate testified to by Tamayo. The jury reasonably could infer that Crooks and Albino worked hand-in-hand on this importation scheme.

**B. Improper Statements by the Prosecutor**

■ Crooks claims certain statements made by the prosecutor during opening statement and closing argument amount to reversible error. The Assistant United States Attorney, during his opening statement, declared: "We are here this morning to try a case of a drug dealer from Delaware. This man right here, Mr. Gerald Crooks." In his closing argument, the AUSA said: "It is Christmastime and there are some mother's [sic] up in Delaware who are hoping this is going to be a good Christmas, that he won't show up. 'The local drug dealer is not going to come back and torment my kids.' You are the ones who makes [sic] the decision whether that is going to happen or not. Only you can stop him. Only you. I ask you to do it."

■ Improper comments by a prosecutor constitute reversible error when they occasion a substantial adverse effect on a defendant's right to a fair trial.[12] In resolving this contention we consider the magnitude of the prejudicial effect of the statement, the efficacy of any cautionary instruction, and the strength of the prosecution's evidence.[13] Absent a timely objection, in the case at bar we review this claim for plain error only.[14] We conclude that the challenged statements did not rise to the level of plain error. The district court instructed the jury after opening statements, and again before closing arguments, that what the attorneys said was neither evidence nor a dispositive declaration of the controlling law. Further, the record contains abundant evidence of Crooks' guilt.[15]

**C. Strike for Cause**

■ Crooks contends that the district court erred by failing to permit his counsel to examine for potential bias a member of the jury venire whose husband worked for the DPS.[16] The record reflects that the venire as a whole was questioned about any potential bias stemming from a venire member's family relationship with a law enforcement officer and that no member of the venire

10. *See United States v. Resio–Trejo*, 45 F.3d 907 (5th Cir.1995) (intent to distribute may be inferred from the quantity and cost of the drugs).

11. *See United States v. Diaz–Carreon*, 915 F.2d 951 (5th Cir.1990) (evidence of consciousness of guilt coupled with control over the vehicle in which drugs are found is sufficient to establish knowledge in a hidden compartment case); *Resio–Trejo* (same).

12. *United States v. Andrews*, 22 F.3d 1328 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 346, 130 L.Ed.2d 302 (1994).

13. *Id.*

14. *United States v. Wicker*, 933 F.2d 284 (5th Cir.), *cert. denied,* 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991). In order to prevail under this standard Crooks must establish that there was error, which was clear or obvious, affecting his substantial rights. *United States v. Calverley*, 37 F.3d 160 (5th Cir.1994) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995).

15. Although the prosecutor's remarks did not amount to plain error, we must note that counsel's reference to Christmas dangerously approached impermissible argument. Counsel is not permitted to make an appeal to passion or prejudice calculated to inflame the jury. *See United States v. Brown*, 887 F.2d 537 (5th Cir. 1989); *United States v. Ledezma–Hernandez*, 729 F.2d 310 (5th Cir.1984).

16. Marriage to a law enforcement official, without more, is insufficient to constitute bias. *United States v. Bryant*, 991 F.2d 171 (5th Cir.1993).

indicated any perceived difficulty in being fair and impartial. Further, the record reflects that defense counsel did not seek an individual voir dire examination of that venire member.

### D. Rebuttal

Crooks maintains that the district court erred by permitting the government to reopen its case-in-chief by calling Tamayo after the defense rested. This argument lacks merit; the government did not do so. Rather, Tamayo appropriately was called as a rebuttal witness. Tamayo's testimony that the market price of cocaine in Guatemala was $5000 per kilogram was in direct response to Albino's claim that he had purchased 1.4 kilograms of cocaine for $2000.

### E. Ineffective Assistance of Counsel

 Finally, Crooks contends that his trial counsel was ineffective. We may resolve claims of constitutional ineffective assistance of counsel on direct appeal only in the rare case where the record permits a fair evaluation of the merits of the claim.[17] The record before us does not so permit and we decline to reach this claim, doing so without prejudice to its reassertion in a proper proceeding.

The judgment appealed is AFFIRMED.