REVISED FEBRUARY 10, 2011

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals
Fifth Circuit**

**F I L E D**
February 9, 2011

Lyle W. Cayce
Clerk

No. 10-20007

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

COREY A. RANEY,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DEMOSS, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:

Appellant Corey Raney was convicted by a jury for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He now appeals the district court's denial of his motion to suppress evidence obtained subsequent to a traffic stop. He also asks this court to reverse his conviction on the basis of allegedly improper remarks made by the prosecution during closing argument. Because the government failed to establish an objective basis for the traffic stop, we vacate the denial of the motion to suppress and render judgment in favor of Raney. We also address the propriety of the prosecutor's remarks during closing argument.

I.

On September 15, 2008, Raney was stopped by Houston Police Officer Rohan Walker for driving in the wrong lane of traffic. Following a search of his person, Raney was arrested and indicted in a single count indictment for being a felon in possession of a firearm. Before trial, Raney filed a motion to suppress challenging the legality of the traffic stop. To establish the constitutionality of the stop, the government offered the following evidence at the suppression hearing and at trial.

During the suppression hearing, Officer Walker testified that he and Houston Police Officer John Watson had been settling disturbances stemming from Hurricane Ike-related gasoline shortages at a gas station located at the intersection of Almeda-Genoa Road and Chiswick Road. Cars waiting to enter the gas station were backed up on the eastbound lane of Almeda-Genoa and the southbound lane of Chiswick. Because Chiswick was the only street providing access to a subdivision, cars attempting to exit the subdivision were also lined up in the southbound lane. The record does not reflect which cars were waiting to enter the gas station and which were waiting to exit the subdivision. Officers Walker and Watson testified that the southbound lane of traffic on Chiswick was blocked and thus access to and exit from the subdivision was limited to one lane. Officers Walker and Watson were stationed on Chiswick and controlling traffic by temporarily permitting vehicles not queuing for the gas station to travel in the northbound lane of Chiswick, drive around the stopped cars, and exit the subdivision. Officer Watson was stationed at the intersection and Officer Walker was stationed north of the intersection on Chiswick.

Raney's car was in the line of cars traveling southbound on Chiswick towards the intersection. Officer Walker testified that Raney pulled into the northbound lane of Chiswick without his direction and began driving southbound at approximately ten to fifteen miles per hour. Officer Walker

signaled for Raney to turn onto a side street off of the northbound lane of Chiswick. Raney immediately complied with Officer Walker's direction. The officers' testimony did not establish the distance Raney had traveled between where his car was waiting in line and the side street where he pulled into.

Officer Walker testified that as he approached the stopped car, the car windows were lowered and he could smell "a strong odor of marijuana." Officer Walker directed Raney to step out of the car. As Raney did so, Officer Walker observed a brown object fall to the ground, which he believed to be a marijuana cigarette. Officer Walker then signaled to Officer Watson that his assistance was needed. Officer Walker detained Raney for the marijuana, placed Raney in handcuffs, and conducted a search of his person. During the pat-down, Officer Walker testified that he found a .45 caliber Sig Sauer firearm in the waistband of Raney's pants. A search of Raney's car revealed ammunition in the glove compartment. A criminal history check indicated that Raney had a prior felony conviction. Raney was subsequently arrested for being a felon in possession of a firearm.

Afer presenting its evidence at the suppression hearing, the government argued that it established that Raney committed three traffic violations: (1) driving in the wrong lane of traffic, (2) failing to obey a police officer's directions, and (3) reckless driving, and thus the officers had an objective basis justifying the traffic stop. Raney argued that because he did not actually commit a traffic violation, Officer Walker did not have probable cause to conduct the initial traffic stop and any evidence obtained from the subsequent search must be suppressed. The district court held that Raney committed a traffic violation per se when he drove in the wrong lane of traffic, thus the officers had probable cause to conduct the traffic stop. The district court did not make any findings with respect to the government's arguments that Raney failed to obey the police officer's directions or was driving recklessly.

At trial, Raney's sole defense was that he was not in possession of a firearm at the time of his arrest. Officers Walker and Watson testified for the government. The officers' trial testimony was substantially similar to the testimony offered at the suppression hearing. Raney's wife Jasmine Raney testified for the defense. Jasmine testified that she had been in the car with Raney prior to the traffic stop, but left the car before Raney pulled out of line because of an altercation between the two. She testified that on the day in question, Raney was wearing a "muscle shirt" and gray cotton shorts with a missing drawstring. She stated that she did not think Raney could have concealed a gun in the shorts. She could not recall whether Raney had been wearing the gray shorts after his release from custody later that day. She further testified that she did not see a gun or ammunition before she left the car. Finally, she stated that she saw Raney had been stopped and arrested but did not approach or intervene.

The jury found Raney guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He was sentenced to 108 months' imprisonment and a three year term of supervised release. On appeal, Raney challenges the denial of his motion to suppress. He also argues that the government committed reversible error by making improper remarks during closing arguments.

## II.

When reviewing the denial of a motion to suppress, we review a district court's factual findings for clear error and review de novo its legal conclusions under the Fourth Amendment. See United States v. Zavala, 541 F.3d 562, 573-74 (5th Cir. 2008). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." United States v. Jacquinot, 258 F.3d 423, 427 (5th Cir. 2001). "[W]e may consider all of the evidence presented at trial, not just that presented before the ruling on the suppression motion, in the

light most favorable to the prevailing party," which in this case is the government. United States v. Ibarra, 493 F.3d 526, 530 (5th Cir. 2007).

A.

The stop of a vehicle and detention of its occupants constitutes a "seizure" under the Fourth Amendment. United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). However, "[a] police officer may stop a vehicle if he has probable cause to believe a traffic violation has occurred." United States v. Cole, 444 F.3d 688, 689 (5th Cir. 2006) (citing Whren v. United States, 517 U.S. 806, 810 (1996)). "The rule articulated by the Supreme Court in Whren provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions." United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998). "[T]he flip side of that leeway is that the legal justification must be objectively grounded." Id. (citing Whren, 517 U.S. at 812-14). If the alleged traffic violation forming the basis of the stop was not a violation of state law, there is no objective basis for justifying the stop. See id. (citing Goodwin v. Johnson, 132 F.3d 162, 173 (5th Cir. 1998)); Cole, 444 F.3d at 689; United States v. Lopez-Valdez, 178 F.3d 282, 288 (5th Cir. 1999). "[T]he constitutionality of the officer's stop of [a defendant]'s vehicle must stand or fall based on whether [the defendant] violated Texas law." Cole, 444 F.3d at 689. The government argues only that the stop was proper because Raney committed one or more traffic violations. Thus, this appeal requires us to determine whether the stop was justified at its inception.

B.

The district court found that driving in the wrong lane of traffic was a per se traffic violation justifying the stop. The Texas Transportation Code provides that a driver shall drive on the right half of the roadway unless "the operator is passing another vehicle; . . . an obstruction necessitates moving the vehicle left of the center of the roadway and the operator yields right-of-way to a vehicle; .

5

. . or the operator is on a roadway restricted to one-way traffic." TEX. TRANSP. CODE ANN. § 545.051(a) (West 1999). Because the plain language of the Code provides limited exceptions to the general prohibition against driving in the oncoming lane of traffic, the district court erred in determining that Raney had committed a traffic violation per se. See Lopez-Valdez, 178 F.3d at 288 (finding a traffic stop unconstitutional because the reason for the stop was not actually a violation); Miller, 146 F.3d at 278-79 (finding that a plain reading of the statute did not support the officer's stated reason for the traffic stop).

Raney arguably crossed into the oncoming lane of traffic to pass the line of cars waiting to enter the gas station, which, as recognized by the government, "entirely blocked" the road for cars attempting to exit the subdivision, circumstances that may constitute an obstruction or limit travel to one lane of traffic. See TEX. TRANSP. CODE ANN. §§ 545.051(a). Moreover, the government essentially concedes in its brief that Raney did not violate this Code provision.[1] However, the government argues that Raney committed the alternative traffic violations raised during the suppression hearing: (1) failure to obey a police officer's directions and (2) reckless driving. We consider each in turn.

C.

---

[1] We respectfully disagree with the dissent that the record establishes that an exception to the general prohibition of driving in the wrong lane of traffic has not been met. The district court made only one finding– that Raney committed a traffic violation by driving in the wrong lane of traffic. The government, not the defendant, carries the burden of establishing that a traffic violation has been committed. The government failed to offer evidence before the district court or argue in its briefing the applicability of said exceptions. The record establishes that this was more than a "garden-variety traffic jam." Officer Walker testified that when he arrived at the gas station, there were "disturbance calls coming in from all angles, roads were blocked off, and it was a real mess." The cars lined up on the southbound lane of Chiswick blocked the only exit from the subdivision. As such, the record does not demonstrate that Raney affirmatively committed a traffic violation.

The government argues that Raney violated the law when he failed to obey Officer Walker's traffic signals. Although not identified by the parties, the government is presumably asserting that Raney violated Code provision § 542.201(1), which states that "[a] person may not willfully fail or refuse to comply with a lawful order or a direction of . . . a police officer." TEX. TRANSP. CODE § 542.501(1) (West 1999). At the suppression hearing, the district court stated it had not made a finding on "whether or not it would be a fair inference that [Raney] was aware that the officers were directing traffic."

There is no evidence in the record demonstrating that Raney was aware that the officers were directing traffic. The evidence establishes that Officers Watson and Walker were approximately 100 feet, or one-half a block, apart and could see each other. Officer Watson was directing traffic at the intersection of Chiswick and Almeda-Genoa and Officer Walker was stationed in the northbound lane of Chiswick, south of the side street where Raney was searched. The evidence further established that the line of cars on Chiswick extended north of the side street by "at least" five to seven cars. Officer Walker testified at trial that he had positioned himself such that "they," the cars in line on Chiswick, could see him. However, he did not testify that he could see Raney's vehicle or establish that Raney could have seen him or have been aware that he was directing traffic. Further, Officer Watson testified that their patrol car was parked at the gas station at the intersection of Almeda-Genoa and Chiswick. Finally, the evidence established that Raney complied with all of the officers' instructions as soon as he pulled into the northbound lane of traffic and became aware of Officer Walker's presence. Because the government did not offer evidence to establish that Raney was aware of the presence of the officers, we find that Raney did not violate § 542.201(1).

D.

Under Texas law, a driver commits the offense of reckless driving if he "drives a vehicle in wilful or wanton disregard for the safety of persons or property." TEX. TRANSP. CODE ANN. § 545.401(a) (West 1999). "In the context of reckless driving, 'willful and wanton disregard' means the deliberate and conscious indifference to the safety of others." Brown v. State, 183 S.W.3d 728, 733 (Tex. App.—Hous. [1st Dist.] 2005, pet. ref'd) (quotations and citation omitted). The district court declined to make a specific finding on "whether or not driving on the wrong side of the street heading towards a police officer or simply driving on the wrong side of the street is reckless per se."

Officer Walker testified that he believed Raney was driving recklessly when he pulled into the northbound lane where Officer Walker was standing simply because Officer Walker "would have been hit" if he had not moved. This argument is specious. Recklessness clearly requires a showing of willful and wanton disregard for the persons or property of others. See id. Officer Walker testified that Raney was driving approximately ten to fifteen miles per hour in a lane with no oncoming traffic. Officer Walker did not testify as to the distance between where he was standing and Raney's car after it pulled into the northbound lane, did not testify that Raney was ever close to hitting him, nor did he testify that Raney could not have safely stopped or changed course before reaching Officer Walker. The government did not present evidence to establish that other cars had entered the northbound lane of traffic or that Raney's driving was likely to have caused injury to persons or property. Finally, the evidence does not establish that Raney was aware that the officers were directing traffic at the time he initially pulled into the opposing lane of traffic and thus could not have been driving with willful and wonton disregard for the safety of others. As such, there is insufficient evidence in the record to establish that Raney violated § 545.401(a).

E.

Although the government does not so request, this court generally remands to the district court to make factual findings on probable cause in the first instance. See Devenpeck v. Alford, 543 U.S. 146, 156 (2004) (declining to address issue of probable cause in the first instance on appeal); Cole, 444 F.3d at 688 (remanding for factual development to determine whether a traffic violation had been committed because the court was unable to "resolve the legality of the stop without additional fact finding").

At the suppression hearing, the government presented evidence to establish that Raney committed three traffic violations: (1) driving in the wrong lane of traffic, (2) disobeying an officer directing traffic, and (3) reckless driving. The government bears the burden of proving that the stop was constitutional when, as here, the stop and search were conducted without a warrant. See United States v. Guerrero-Barajas, 240 F.3d 428, 432 (5th Cir. 2001). Thus, the suppression hearing provided the government the opportunity and obligation to present evidence establishing the validity of the traffic stop. Although the district court did not make specific findings on failure to obey and reckless driving, the record has nonetheless been developed as to these arguments. We will not afford the government a second opportunity to present evidence to the district court in an attempt to meet their burden of proof. Because the government failed to establish the necessary objective basis justifying the traffic stop, we need not remand on these grounds.[2]

---

[2] The government asserts for the first time on appeal that the officers had reasonable suspicion to believe that Raney was committing a traffic violation. Raney argues that this court should not consider arguments that lower the government's burden of proof on appeal and that were not raised before the district court. Our case law is clear that unless a defendant actually committed a traffic violation, there is no objective basis for the stop in the context of a traffic stop. See, e.g., Whren v. United States, 517 U.S. 806, 808-10 (1996); United States v. Cole, 444 F.3d 688, 689 (5th Cir. 2006); United States v. Lopez-Valdez, 178 F.3d 282, 288 (5th Cir. 1999); United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998). Because an officer's reasonable suspicion that a traffic violation occurred requires the same objective basis as probable cause for a traffic stop, i.e., that a traffic law was actually violated, we need not undertake a separate analysis.

F.

The government asserts for the first time on appeal that Raney committed other violations of Texas law in an attempt to establish the necessary objective basis: (1) failure to stay within a single lane on a roadway divided into two or more clearly marked lanes outside of which he could not safely move, TEX. TRANSP. CODE ANN. § 545.060(a) (West 1999); (2) changing lanes within 100 feet of an intersection, TEX. TRANSP. CODE ANN. § 545.056(a) (West 1999); (3) changing lanes when the road was not clearly visible and free from approaching traffic, TEX. TRANSP. CODE ANN. § 545.054(a) (West 1999); and (4) interfering with the performance of a peace officer's duties, TEX. PEN. CODE. ANN. § 38.15(a)(1) (West 2003).

Raney argues that this court should consider these grounds forfeited because they were raised for the first time on appeal. See United States v. Scroggins, 599 F.3d 433, 448 (5th Cir. 2010) ("[F]ailure to raise specific issues or arguments in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal.") (emphasis and quotations omitted). We need not determine whether the government forfeited these bases because assuming arguendo that it did not, we find that the evidence does not support a finding that Raney committed these traffic violations.

The evidence establishes that Raney did not violate Texas Transportation Code §§ 545.060(a) and 545.054(a). Section 545.060(a) states that "[a]n operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." Section 545.054(a) states that "[a]n operator may not drive on the left side of the center of the roadway in passing another vehicle unless . . . the left side is clearly visible and free of approaching traffic for a distance sufficient to permit passing without interfering with the operation of the passed vehicle or a vehicle approaching

from the opposite direction." There is no evidence in the record to establish that Raney could not move safely into the northbound lane. The evidence demonstrates that the northbound lane was free of traffic at the time Raney pulled into it. The evidence does not establish that Raney could not have moved safely around the line of waiting cars at the speed of ten to fifteen miles per hour.

The evidence further demonstrates that Raney did not violate Texas Transportation Code § 545.056(a). Section 545.056(a) states that "[a]n operator may not drive to the left side of the roadway if the operator is . . . approaching within 100 feet of an intersection." Officer Watson testified that he was positioned at the intersection of Almeda-Genoa and Chiswick, approximately 100 feet south from where Officer Walker was stationed on Chiswick. Officer Walker testified that the line of cars north of his position was "at least" five to seven cars long. Thus, the testimony demonstrates that Raney was not within 100 feet of an intersection.

Finally, the evidence establishes that Raney did not violated Texas Penal Code § 38.15(a)(1). Section 38.15(a)(1) states that "[a] person commits an offense if the person with criminal negligence interrupts, disrupts, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PEN. CODE. ANN. § 38.15(a)(1). Just as there is no evidence establishing that Raney was aware that a peace officer was performing his duties, there is no evidence demonstrating that Raney acted with criminal negligence when he pulled into the northbound lane at ten to fifteen miles per hour to move around a line of traffic.

Because the government did not establish that Raney committed a traffic violation on any of the argued grounds, we find that as a matter of law there was

no objective basis justifying the traffic stop. We therefore vacate the district court's denial of Raney's motion to suppress and render an acquittal.[3]

## III.

Raney also challenges several statements made by the prosecutor during closing arguments. First, in reference to the firearm found on Raney, the prosecutor stated that "[t]he gun was loaded, a round in the chamber, ready to be fired. Bang, bang, bang." Raney did not object. Next, the prosecutor told the jury that "Jasmine Raney's testimony . . . directly accus[ed] the officers of lying to you [and] planting evidence." Raney objected. The district court sustained the objection and issued a curative instruction. Finally, the prosecutor asked the jurors to decide whether the police officers had a motive to "tell something other than truth," and indicated that they did not by asking "[w]ere the officers going to put their careers on the line?" Raney objected. The district court sustained the objection and issued a curative instruction.[4]

---

[3] Rendering judgment is appropriate in this case because without a legal justification of the stop, the subsequent search and arrest were unconstitutional and any evidence obtained therefrom are inadmissible. See Lopez-Valdez, 178 F.3d at 289. We further find that the police officer's reasons for the traffic stop do not "pass muster under the good-faith exception to the exclusionary rule." Id. ("[I]f officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive."); see also Cole, 444 F.3d at 689 (finding "no case in this circuit which has relied on the good faith exception to justify a traffic stop when the police officer erroneously believed the conduct he observed was a traffic violation" and further holding that "[i]f [defendant] did not violate [the traffic laws], the stop is not justified and the motion to suppress should be granted without regard to the officer's subjective good faith."); United States v. Granado, 302 F.3d 421 (5th Cir. 2002); cf. United States v. Nichols, 142 F.3d 857, 860 n.1 (5th Cir. 1998) (noting that this circuit's application of the good faith exception to reasonable suspicion determinations always involve "circumstances extrinsic to the government agent's personal observation at the time of the stop").

[4] A fourth remark which Raney challenges was the prosecutor's statement during closing argument that any discrepancies in the polices officers' testimonies, specifically whether Raney was wearing jeans or jean shorts at the time of the stop and whether Raney was handcuffed during the pat-down were "understandable because [the police officers] were probably thinking about how they're going to repair their homes [and] take care of their families." The district court overruled Raney's objection. On appeal, Raney argues that this

This court uses a two-step analysis to determine whether the prosecutor's remarks constitute reversible error. See United States v. Munoz, 150 F.3d 401, 414 (5th Cir. 1998). First, this court determines whether the prosecutor's remarks were improper. Id. If an improper remark was made, this court next determines whether the remark "prejudiced the defendant's substantive rights." Id. at 415. The prejudice determination involves "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." United States v. Tomblin, 46 F.3d 1369, 1389 (5th Cir. 1995). "The magnitude of prejudicial effect is measured by 'looking at the prosecutor's remarks in the context of the trial in which they were made and attempting to elucidate their intended effect.'" United States v. Ramirez-Velasquez, 322 F.3d 868, 875 (5th Cir. 2003) (quoting United States v. Fields, 72 F.3d 1200, 1207 (5th Cir. 1996)). When determining whether a prosecutor's comment was improper, we look at the comments in context of the proceedings as a whole. See United States v. Washington, 44 F.3d 1271, 1278 (5th Cir. 1995).

Because we have found that Raney's conviction cannot stand as a matter of law, we need not actually determine whether the remarks constituted reversible error. However, we feel it prudent to address this issue because the government has been cautioned repeatedly by this court against making such arguments, yet we continue to face them on appeal.

A prosecutor is "not permitted to make an appeal to passion or prejudice calculated to inflame the jury." United States v. Crooks, 83 F.3d 103, 107 n.15 (5th Cir. 1996). During closing arguments, "[a] prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable

---

statement intended to "inflame the jury's passions" and garner the jury's sympathy. Although the government is prohibited from appealing to passion or prejudice in order to inflame the jury, we find that the prosecution's remark does not have a strong enough prejudicial effect to constitute reversible error. See United States v. Crooks, 83 F.3d 103, 107 n.15 (5th Cir. 1996).

inferences or conclusions that can be drawn from that evidence." United States v. Vargas, 580 F.3d 274, 278 (5th Cir. 2009). This court has also "held it improper for a prosecutor to ask a jury the rhetorical question whether federal agents would risk their careers to commit perjury" thereby implying that because they are government officials they would not lie. United States v. Gracia, 522 F.3d 597, 600-02 (5th Cir. 2008) (finding it improper for the prosecutor to ask the jury whether the federal agents "would put their careers . . . on the line for committing the offense of aggravated perjury"); see also United States v. Pittman, 2010 WL 4561398, at *3 (5th Cir. Nov. 12, 2010) (unpublished) (finding the prosecutor improperly bolstered federal agents' credibility by indicating that "they 'were just doing their job' and had no reason to lie"); Ramirez-Velasquez, 322 F.3d at 873-74 (finding improper the prosecutor's rhetorical question asking the jury "[d]o the agents have any reason? Do they have a reason to throw away their career, to say, . . . I'm going to give up my twenty-year law enforcement career, because I really care that two people get convicted"); United States v. Gallardo-Trapero, 185 F.3d 307, 319-21 (5th Cir. 1999). Further, it is improper for a prosecutor to vouch for the credibility of a federal agent because this type of statement impermissibly invokes the "aegis of a governmental imprimatur." See id. at 320.

It is troubling to this court that the government made these types of improper remarks in the present matter because the primary inculpatory evidence was the testimony of the law enforcement witnesses whose credibility was bolstered by the prosecution. As emphasized numerous times by the prosecutor during closing argument, this case came down to the credibility of Jasmine Raney and the police officers. The prosecution told the jury: "Who are you going to believe; that's what this case is about", and later stated, "Who do you believe? Officers Walker and Watson or Jasmine Raney? That's it . . . ." The prosecutor then proceeded to diminish Jasmine Raney's credibility by telling the

jury to "make no mistake . . . [she] is directly accusing Officers Walker and Watson of lying to you, of planting evidence." Although Raney's defense that he did not possess a weapon arguably supports such an inference, this argument was not proper when it directly attributed the accusation to the sole defense witness who did not actually offer such testimony. In fact, Jasmine Raney testified that she never saw a gun and based on the shorts Raney was wearing, she did not believe that a gun could have been hidden in the waistband. She further testified that she was not present at the time of the stop and thus could not say whether there was a gun on his person when he was searched. The government then proceeded to improperly bolster the credibility of the police officers by improperly telling the jury that they had "no reason to risk their careers" by lying. On rebuttal, the prosecutor again emphasized to the jury that this was "a case of credibility." In Gracia, this court found comments similar to those made in the present matter reversible under the plain error standard of review. 522 F.3d at 601. Raney does not face such a burden, which suggests that "less compelling facts" could warrant reversal in his case. See United States v. McCann, 613 F.3d 486, 497 (5th Cir. 2010).

Despite our precedent clearly condemning such remarks, the government continues to disregard our admonishments. Indeed, the government conceded as much at oral argument by stating "cases in the Fifth Circuit ha[ve] admonished the government [not to] make such statements" and "we have been admonished and encouraged not to do that time after time." Further frustrating the issue is the quandary defendants often find themselves in: if they object to improper remarks during the trial, they likely receive a curative instruction that frequently forms the basis for this court to affirm; if they do not object in order to avoid this result they have to overcome the very difficult hurdle of plain error review. These types of improper remarks substantially effect a defendant's rights and the integrity of this court. As such, we write once more to do all that we

can–state clearly and unequivocally that these types of remarks and arguments are improper and if the government continues to ignore our reproval, perhaps it is time for this court to reconsider our jurisprudence on curative instructions and plain error in this context.

IV.

For the foregoing reasons, we VACATE the judgment of the conviction and RENDER judgment of acquittal in favor of the defendant.

VACATED and RENDERED.

BENAVIDES, Circuit Judge, dissenting.

I respectfully dissent. I would affirm the district court's suppression ruling: the stop was justified because Raney violated the law by driving on the wrong side of the road. Uncontested record evidence indicates that at the time of the stop, Raney was driving on the lefthand side of the road, which is a violation of Texas Transportation Code § 545.051(a) except in limited circumstances. None of those exceptions apply here. That said, in light of the Government's improper arguments at trial, as discussed by the majority, I believe this panel should reach the appellant's argument that the Government's improper arguments constitute reversible error.

The majority reverses the district court's suppression ruling, holding that the district court erred in finding probable cause because Raney was driving on the wrong side of the road at the time of the stop. In particular, the majority takes umbrage with the district court's conclusion that driving on the wrong side of the road is a per se traffic violation. I do not understand this to be the district court's holding.[1] Moreover, even if the district court misstated the law, we should still consider independently whether Raney violated § 545.051(a).

---

[1] After finding that Raney violated the Texas Transportation Code's prohibition on driving on the left side of the road, the district court did comment that "Mr. Raney committed a traffic violation by driving on the wrong side of the road, period." However, in context, I do not believe the district court used the term "period" to mean "per se." Consider the full text of the court's comment:

> I am a little bit on the fence, frankly . . . about where Mr. Raney was and why—and whether or not it would be a fair inference that he was aware that the officers were directing traffic, but I don't believe I need to get there. Mr. Raney committed a traffic violation by driving on the wrong side of the street, period.

The government had presented three alternative grounds for probable cause: driving on the wrong side of the road, reckless driving, and disobeying a police officer. Essential to both of these latter offenses was exactly where Raney's vehicle was located and whether he was aware that the officers were directing traffic. But the district court held that it need not make these factfindings because "Mr. Raney committed a traffic violation by driving on the wrong side of the street, period." Thus, I understand the district court's use of "period" here to mean "end of discussion," not that driving on the wrong side of the street is a per se traffic offense.

Remand would be appropriate if there were contested factual issues, like whether Raney actually drove on the lefthand side of the street.[2] But here, there is no dispute as to the facts relevant to § 545.051(a), only as whether Raney's undisputed conduct constituted an offense. Whether particular conduct constitutes an offense is a question of law we review de novo.[3] There is no reason this panel should not apply the correct law to the undisputed facts in the record before us.

Raney's conduct violated § 545.051(a), and none of the statutory exceptions apply. That statute provides:

> An operator on a roadway of sufficient width shall drive on the right half of the roadway, unless:
>
> (1) the operator is passing another vehicle;
>
> (2) an obstruction necessitates moving the vehicle left of the center of the roadway and the operator yields the right-of-way to a vehicle that:
>
> (A) is moving in the proper direction on the unobstructed portion of the roadway; and
>
> (B) is an immediate hazard . . . .[4]

---

[2] United States v. Cole, 444 F.3d 688, 690 (5th Cir. 2006) (remanding a motion to suppress because "factual findings"—specifically, whether an intersection had a crosswalk and where an approaching vehicle had stopped—were needed to determine whether the defendant violated state law).

[3] See United States v. Williams, 602 F.3d 313, 315 (5th Cir. 2010) ("The sufficiency challenge requires determining what conduct constitutes an offense under § 111(a)(1). The court reviews questions of statutory interpretation de novo." (citing United States v. Kay, 359 F.3d 738, 742 (5th Cir.2004)).

[4] TEX. TRANSP. CODE § 545.051(a). The statute provides for two other exceptions, both of which are plainly irrelevant in this case. One exception is where "the operator is on a roadway divided into three marked lanes for traffic," and the other is where "the operator is on a roadway restricted to one-way traffic." Because undisputed record evidence establishes that Chiswick is a two-lane, two-way street we need discuss these exceptions no further.

18

It is undisputed that Raney was driving on the left half of Chiswick when the officers effected the stop. Thus, the relevant question is whether any of the statutory exceptions apply.

Neither the exception for passing another vehicle nor the exception for avoiding an obstruction applies here. As to the first of these, Raney's driving on the left side of the road cannot properly be termed "passing." The Texas Transportation Code explains: "'Pass' or 'passing' used in reference to a vehicle means to overtake and proceed past another vehicle moving in the same direction as the passing vehicle or to attempt that maneuver."[5] Thus, this statutory definition of "passing" is plainly limited to moving vehicles. Further, the definition is further limited to passing "another vehicle." Driving on the wrong side of the road in attempt to bypass a line of cars stopped in traffic is not passing "another moving vehicle," and this exception does not apply by the statute's plain language.

The second statutory exception, avoidance of an obstruction, is similarly inapplicable. I disagree with the majority that the line of cars waiting to enter the gas station "constitutes an obstruction." Uncontested record evidence indicates that this was a garden-variety traffic jam.[6] It was not, for instance, a situation where a stalled car blocked the righthand lane. I decline to join the majority in holding that an ordinary traffic jam is an "obstruction" that would make driving on the wrong side of the road legal under Texas law for two reasons. First, I cannot imagine that the Code's drafters intended to allow anyone who does not care to wait in traffic to drive with impunity on the wrong side of the street. Second, even if a traffic jam is an "obstruction" under the

---

[5] Id. § 545.001(1) (emphasis added).

[6] Indeed, Raney did not present evidence at the hearing that, at the time of the stop, he was passing another vehicle or attempting to avoid an obstruction in the roadway. Indeed, he did not even argue to the district court that either the "passing" or the "avoiding an obstruction" exception to § 545.051(a) applies here.

Code, the majority neglects a crucial portion of the statute: driving on the left side is only permitted when "an obstruction necessitates moving the vehicle left of the center of the roadway."[7] The Code also does not define "necessitate," but I cannot think that an ordinary traffic jam is the kind of obstruction that necessitates driving on the wrong side of the road. To interpret the statute otherwise would invite chaos.

The majority argues that the Government failed to meet its burden to negate the applicability of the statutory exceptions (exceptions which were neither pointed out nor claimed by the appellee in the court below). It also appears to suggest that we cannot affirm because the district court did not make a finding as to whether either statutory exception applies. I disagree on both points. As discussed above, whether particular conduct constitutes an offense is a pure question of law that we review de novo. The relevant facts are undisputed: the lane in which Raney was driving was blocked by a traffic jam. Cars were standing still; some were waiting to turn into a gas station, while others, like Raney, were waiting to exit the subdivision. Rather than wait in line with the rest of the cars, Raney chose to drive on the wrong side of the street. The sole question is whether this conduct was legal under § 545.051(a). I fail to see what other evidence or factfindings we would need to answer this question.

Finally, I disagree with the majority that the Government "essentially conced[ed]" that Raney did not violate § 545.051(a). To be sure, the Government did not directly address Raney's argument on appeal that he did not violate § 545.051(a) because he was "passing" or avoiding an obstruction. But this does not relieve the appellant of his burden to raise arguments explaining why the

---

[7] Id. § 545.051(a)(2) (emphasis added).

district court's judgment was in error.[8] The Government's poor treatment of the issue does not render the district court's judgment incorrect, and Raney does not win his argument against affirmance by default. We must ask whether he is correct that he did not violate § 545.051(a). His argument to that effect is unpersuasive. He merely quotes the statute and asserts, in conclusory fashion, that he was authorized to "pass other vehicles" or "pass an obstruction." He provides no authority, from the statute or otherwise, to indicate that his conduct in fact constitutes "passing" or "avoiding an obstruction." And as I have explained, the far better view is that his driving on the wrong side of the street was neither of these things.

I turn briefly to the subject of the Government's use of various lines of improper argument. Like my colleagues in the majority, I am deeply troubled by the Government's persistence in making such improper arguments despite our repeated admonishments. The majority does not, however, reach the question of whether such improper arguments constitute reversible error. In my view, the panel should reach this question. In any event, I dissent from the majority's decision to overturn the district court's denial on the suppression motion and its judgment ordering an acquittal.

---

[8] FED. R. APP. P. 28(a)(9)(A) ("The appellant's brief must contain . . . [an] argument, which must contain ... appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."); cf. Int'l Women's Day March Planning Comm. v. City of San Antonio, 619 F.3d 346, 369 n.31 (5th Cir. 2010) ("While San Antonio does bear the burden of showing narrow tailoring, this does not relieve the plaintiffs of their obligation as appellants to raise arguments explaining why the district court's grant of summary judgment to San Antonio was erroneous." (internal citation omitted)).