**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 1, 2013

Lyle W. Cayce
Clerk

No. 11-31140

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

CHILITA WILSON,

> Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:08-CR-99-1

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Chilita Wilson appeals a judgment of conviction based on a guilty plea that reserved the right to contest the district court's denial of her motion to suppress evidence obtained during an officer's stop and subsequent search of her vehicle. The outcome turns on whether a store manager's tip provided the officer with the requisite reasonable suspicion to stop the vehicle.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31140

# I.

On June 18, 2008, Wilson attempted to purchase a gift card at a Home Depot in Zachary, Louisiana.  A month or two earlier, a woman had purchased two gift cards in the $4,000 to $8,000 range with a fraudulent credit card at the same Home Depot.  That transaction was recorded on video and both Detective Dillon (the Zachary Police Department detective assigned to the case) and Eric Robertson (the manager of the Home Depot store) viewed the videotape.  These types of frauds were occurring with some frequency in the region.  As a result of that prior incident, the store implemented a policy requiring manager approval of any gift card purchase over $200.  In turn, when Wilson attempted to purchase the gift card, Cindy Hamilton, the front-end manager, left the register area to retrieve Robertson from a staff meeting being held in an office on the left-hand side of the store.[1]  At the suppression hearing, Robertson testified: "I think she even told me the young lady didn't want to give her, her driver's license number or show the I.D., something to that effect."  When Robertson and Hamilton turned the corner from the staff offices to return to the cash registers, Robertson saw that "the young lady had turned around and started walking out of the store," without making the gift card purchase, at a "little quick pace."  She also appeared to be talking on her cell phone.  Robertson followed her "from a distance."  The woman did not turn around or look back as she walked away.  Robertson watched as a vehicle pulled up to the front of the store, then drove into the parking lot and parked; the woman walked to the parked vehicle, got in, and the vehicle "sped off."

Robertson decided to call Detective Dillon to report the incident.  He explained to Detective Dillon the suspicious actions he had observed and gave Detective Dillon a description of the vehicle as well as the direction it was

---

[1] At the evidentiary hearing, Robertson could not recall the amount of the attempted gift card purchase, other than knowing it was for an amount over $200.

2

traveling.  After receiving Robertson's phone call, Detective Dillon "got into [his] patrol vehicle and proceeded to the area near the Home Depot," and "within five minutes" he had intercepted a vehicle a few miles from the Home Depot that fit the description Robertson had provided.  Detective Dillon pulled the vehicle over for "suspicion of credit card fraud."

When Detective Dillon stopped the vehicle, Chilita Wilson was in the passenger seat, a male was driving, and another male was in the backseat. Detective Dillon first interviewed the driver of the vehicle, Eric Russell, outside the vehicle, while the other two occupants remained in the vehicle.  Russell told Detective Dillon that he was trying to find his grandmother's residence in Baton Rouge, but he could not provide Detective Dillon with his grandmother's name, address, or the general location of her residence.  Russell also informed Detective Dillon that Wilson had rented the vehicle, and that fact was later verified from paperwork in the vehicle.  Following his interview with Russell, Detective Dillon asked Wilson to get out of the vehicle and began interviewing her.  Wilson told Detective Dillon she had gone to the Home Depot to purchase either a road map or a gift card (Detective Dillon could not remember which at the suppression hearing), but she had changed her mind.  Eventually, Wilson consented to a search of the vehicle.  The third man was removed from the vehicle.  During the search, Detective Dillon discovered approximately forty-five Wal-Mart gift cards with receipts, bound together with a rubber band underneath the front passenger seat, numerous credit cards inside Wilson's purse, a laptop computer, road maps, and an encoder.  Detective Dillon arrested the three passengers—Eric Russell, Charles Fagbemi, and Chilita Wilson.

Wilson was charged in an indictment with one count of conspiracy to use and possess counterfeit access devices in violation of 18 U.S.C. § 371, one count of possessing counterfeit access devices in violation of 18 U.S.C. § 1029(a)(3), one count of possessing device-making equipment in violation of 18 U.S.C. § 1029(a)(4), and one count of using counterfeit access devices in violation of 18

U.S.C. § 1029(a)(1).  Wilson moved to suppress all evidence seized during the June 18, 2008 stop and search of her vehicle.  Judge Parker held a suppression hearing, and both sides submitted a post-hearing memorandum.  After the suppression hearing, the case was reassigned to Chief Judge Tyson.  On that same day, Chief Judge Tyson denied the motion to suppress "for the reasons set forth in the government's post-hearing brief."  Wilson, reserving the right to appeal the denial of her motion to suppress, then conditionally pleaded guilty to using counterfeit access devices, and the remaining charges were dismissed.  After Chief Judge Tyson conducted Wilson's re-arraignment, the case was reassigned to Judge Jackson.  Judge Jackson sentenced Wilson to 33 months of imprisonment and two years of supervised release.  In addition, Judge Jackson imposed restitution in the amount of $1,974.46.  Wilson timely appealed.  On appeal, Wilson argues that the district court erred by denying her motion to suppress the evidence obtained during the June 18, 2008 stop and search of her rental vehicle.

## II.

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights."[2]  Generally, when reviewing a motion to suppress, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear error,[3] viewing the evidence in the light

---

[2] *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)).

[3] This Court has found that "[w]here a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005).  However, it is unclear that the district court is entitled to any such heightened deference in this case because the judge who denied Wilson's motion to suppress did not preside over the evidentiary hearing.  In any event, even without such a heightened level of deference, we find sufficient evidence to affirm the district court's

most favorable to the prevailing party.[4] In this case, however, the district court judge who denied Wilson's motion to suppress did not make any factual findings in his ruling. Instead, he denied Wilson's motion to suppress "for the reasons set forth in the government's post-hearing brief." This Court has explained that "[when] the district court enter[s] no factual findings and indicate[s] no legal authority underlying its decision to admit the evidence obtained . . . , we must independently review the record to determine whether any reasonable view of the evidence supports admissibility."[5] Thus, we will "uphold the ruling of the Trial Court if there is any reasonable view of the evidence to support it."[6] Here, we find that a reasonable view of the evidence supports admissibility, and accordingly, we affirm.

### III.

Our review of Wilson's motion to suppress involves a two step inquiry. We first ask whether Detective Dillon had a reasonable suspicion that criminal activity may have been afoot, such that his stop of the vehicle was legal. After finding the initial stop was legal, we then consider whether Detective Dillon's subsequent search of the vehicle falls within an exception to the warrant requirement.

### A.

Under *Terry v. Ohio*, an officer may make an investigatory stop if he "reasonably. . . conclude[s] in light of his experience that criminal activity may

---

denial of Wilson's motion to suppress.

[4] *United States v. Raney*, 633 F.3d 385, 389 (5th Cir. 2011).

[5] *United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir. 1991). *See also United States v. Smith*, 543 F.2d 1141, 1145 (5th Cir. 1976); *United States v. Bagley*, 537 F.2d 162, 166 (5th Cir. 1976); *United States v. Horton*, 488 F.2d 374, 379–80 (5th Cir. 1973), *cert. denied*, 416 U.S. 993 (1974).

[6] *United States v. Montos*, 421 F.2d 215, 219 n.1 (5th Cir. 1970).

be afoot."[7]   The Supreme Court has extended that principle to allow for an investigatory stop when an officer has a reasonable suspicion "that a person they encounter was involved in or is wanted in connection with a completed felony."[8] When an officer conducts a stop without a warrant, the Government bears the burden of proving reasonable suspicion.[9]   Turning to the particulars of the reasonable suspicion inquiry, "reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure."[10]   To constitute a reasonable suspicion, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."[11]   Here, a reasonable view of the evidence supports a finding that Detective Dillon had a reasonable suspicion based on the tip he received from Robertson.

To be clear, Detective Dillon's reasonable suspicion need not be based on his personal observations.  Instead, an informant's tip may provide the requisite reasonable suspicion to justify an investigatory stop.[12]   Here, Robertson's tip to Detective Dillon contained "enough indicia of reliability" to justify the stop.[13]   For

---

[7] 392 U.S. 1, 30 (1968).

[8] *United States v. Hensley*, 469 U.S. 221, 229 (1985).  *Hensley* applies here because the prior crime the woman was wanted for—credit card fraud—is a felony under 18 U.S.C. § 1029.

[9] *United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010).

[10] *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).

[11] *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

[12] *See Adams v. Williams*, 407 U.S. 143 (1972).

[13] *Id.* at 147.  "Whether a particular tip . . . provides a sufficient basis for an investigatory stop may depend upon the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale."  *United States v. Gonzalez*, 190 F.3d 668, 672 (5th Cir. 1999).

one, Robertson was known to Detective Dillon,[14] and the two were working together on the prior fraud case, such that Detective Dillon could reasonably consider Robertson to be a reliable informant. Robertson also provided Detective Dillon with specific information.

Moreover, the particular information Robertson relayed to Detective Dillon—specifically, the suspicious actions he had observed and Wilson's resemblance to the suspect in the prior case—was sufficient to give rise to a reasonable suspicion. Wilson contends that innocent explanations for her behavior preclude us from finding that Detective Dillon had a reasonable suspicion that she had attempted to engage in credit card fraud. We disagree. "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct."[15] Instead, the Supreme Court has made clear that each of a series of acts, "perhaps innocent in itself," may be taken together to create a reasonable suspicion that "warrant[s] further investigation."[16] In addition to providing Detective Dillon with a reasonable suspicion that Wilson had attempted to engage in fraud, Robertson's tip provided a reasonable suspicion that Wilson was the suspect wanted for the prior fraud. During the phone conversation, Robertson told Detective Dillon "that he proceeded to the area where the female subject was, and she saw him, and apparently changed her mind, and left the store at a brisk pace." Robertson "basically indicated he believed it was her," but he did not give Detective Dillon any information about a physical description of the suspect "due to the fact that [they] both had seen the surveillance footage from the incident." From that conversation, Detective Dillon could reasonably infer that, based on the video image Robertson had seen,

---

[14] *See Adams*, 407 U.S. at 146 ("The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip.").

[15] *Arvizu*, 534 U.S. at 277.

[16] *Id.* at 274 (quoting *Terry*, 392 U.S. at 22).

he was able to reliably identify Wilson as the suspect from the prior fraud. In short, when taken together, the suspicious circumstances that Robertson observed and conveyed to Detective Dillon, as well as his identification of the woman, were sufficient to give rise to a reasonable suspicion on the part of Detective Dillon.

### B.

We next consider whether Detective Dillon's subsequent search of the vehicle fell within an exception to the warrant requirement. Wilson argues that her consent was involuntary and, as such, the evidence seized during that search should have been suppressed. However, Wilson's consent argument ignores the alternative rationale offered by the Government. Both in the district court and on appeal the Government has argued that the search was valid under the automobile exception to the warrant requirement. The district court expressly adopted the arguments set forth by the Government in its post-hearing memorandum. As such, it ruled that the search of Wilson's vehicle was legal because consent was voluntarily given and, alternatively, because Detective Dillon had probable cause to search the vehicle under the automobile exception. Because Wilson does not challenge the district court's alternative determination that Detective Dillon had probable cause to search her vehicle, she has waived that issue.[17] Therefore, we affirm the district court's ruling on that alternative ground without reaching Wilson's argument that her consent to the search was involuntary.

Under the automobile exception, "police may conduct a warrantless search of an automobile and any containers therein if they have probable cause to

---

[17] *See Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 183 n.5 (5th Cir. 1996); *Harris v. Plastics Mfg. Co.*, 617 F.2d 438, 440 (5th Cir. 1980).

believe it contains contraband or evidence of crime."[18]  Here, a reasonable view of the evidence supports a finding that Detective Dillon had probable cause to believe the vehicle contained evidence of credit card fraud.  Specifically, after stopping the vehicle, Detective Dillon had a chance to view Wilson's face and found "her appearance consistent with the appearance of the suspect in the other case."  In addition, he saw a laptop in the vehicle, which he knew to be a tool of the trade for credit card fraud.  And, he had suspicious conversations with both Russell and Wilson concerning the purpose of the trip.  In particular, when questioned by Detective Dillon, neither Wilson nor Russell could provide details of where they were going.  They claimed to be on their way to visit Russell's grandmother in Baton Rouge, but neither could provide a name, address, or general location for Russell's grandmother.  When taken together, the tip from Robertson, Wilson's resemblance to the prior suspect, Detective Dillon's suspicious conversations with Russell and Wilson, and the laptop Detective Dillon saw in the vehicle gave him probable cause to believe that the vehicle contained evidence of credit card fraud.

## IV.

For the reasons set forth above, the judgment of conviction is AFFIRMED.

---

[18] *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993).