# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 13, 2011

No. 09-11168

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SHON JEFFERSON, also known as Shon Lee Jefferson,
also known as Shawn Jefferson, also known as Shawn
Lee Jefferson, also known as Kevin Deshun Jefferson,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CR-199-1

Before JOLLY, ELROD, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Shon Jefferson appeals his conviction and the sentence imposed after a jury found him guilty of unlawful possession of a firearm by a felon, possession with intent to distribute a controlled substance, and possession of a firearm in furtherance of a drug-trafficking crime. Jefferson contends that the district court erred by: (1) denying a jury instruction that the "mere presence" of a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-11168

firearm was insufficient proof of guilt under 18 U.S.C. § 924(c); (2) permitting prosecutorial comments about the depiction of forensic evidence on television shows; (3) allowing the prosecutor to ask potential members of the jury about their willingness to reach a guilty verdict without DNA evidence; (4) permitting the prosecutor's comments during closing; and (5) sentencing Jefferson under § 924(c) because he was also subject to a longer mandatory minimum sentence under a separate statute. Although we hold that police testimony must be excluded because of the improper remarks of the prosecutor in closing arguments, we hold that none of the errors alleged require us to reverse the conviction and therefore AFFIRM the judgment of the district court.

## I.

On November 13, 2008, Dallas police officers patrolling a high-crime apartment complex observed three people enter and exit Apartment 110 within five minutes.[1] Jefferson exited the apartment as the officers approached. The officers frisked Jefferson and asked if he lived in the residence. Jefferson responded, "[Y]es, I'm on the lease." When the police asked for his identification, Jefferson entered his apartment and closed the door behind him. Officers heard keys jingling from inside the apartment. Jefferson exited the apartment with his girlfriend and produced identification to the police. He signed a form consenting to a search of his apartment.

In the apartment, police found a locked bedroom, which they opened with a key provided by Jefferson's sister. Jefferson told officers that either his mother (who was actually deceased) or another person lived in the room. In the

---

[1] Many of the facts of this case are contested; the testimony of law enforcement officials was contravened by the testimony of Sarah Coleman, Jefferson's girlfriend. Although the jury found for the government, this opinion later discusses that improper prosecutorial bolstering requires us to exclude the evidence of police officer. This fact section includes several contested facts, which are parsed out in greater detail below.

2

No. 09-11168

bedroom, the officers observed an open safe containing over 50 grams of crack cocaine, two electronic scales, several small plastic bags, marijuana, and a handgun. There were also pictures of Jefferson in the bedroom, the sunglasses that he wore in pictures, and receipts bearing his name and apartment address, which were dated within one month of this event. An officer exited the bedroom and handcuffed Jefferson, who officers testified exclaimed, "How did they get in my [f-ing] safe?" The police found $1,361 in Jefferson's pocket. Jefferson fled the scene and ran approximately 150 yards before being apprehended by the police. A crowd gathered around the apartment, causing the officers to expedite the processing of the crime scene. They gathered certain items from the crime scene and photographed them at a convenience store. Jefferson was charged in a three count indictment with: (1) unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and (3) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

At trial, the government presented the testimony from five officers who were at the scene (as condensed above), along with experts who discussed the seized drugs and the handgun found in the bedroom. The leasing agent of the apartment complex testified that Jefferson was on the lease of Apartment 110. Jefferson's only witness was his girlfriend, Sarah Coleman, who testified that she was present throughout Jefferson's encounter with the police. She testified that Jefferson did not live in Apartment 110; that they lived together in Apartment 134 and were merely visiting Apartment 110. Coleman also testified that Jefferson did not have a key to the apartment or to the bedroom, that no one besides she and Jefferson entered or exited the apartment before the police arrival; that Jefferson's identification was not in the apartment; that the police

3

No. 09-11168

told Jefferson that he would go to jail if he did not sign the consent form, and that Jefferson did not make a remark indicating that the safe was his. On rebuttal, the government introduced evidence of Jefferson's past conviction for possession with the intent to distribute methamphetamine.

During trial, Jefferson's counsel submitted a proposed jury instruction relating to the charge of possession of a firearm in furtherance of a drug trafficking crime. The court, over Jefferson's objection, did not adopt the part of the proposed instruction that would have instructed the jury that the "mere presence" of a gun was insufficient to find Jefferson guilty of the charge. During deliberation, the jury submitted a note to the court asking for clarification of the elements of the charge. Jefferson's counsel declined to request new instructions at this juncture, the judge told the jury to decide on the basis of the instructions they had been given, and the jury returned a guilty verdict on this count.

The jury found Jefferson guilty on three counts: (1) unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and (3) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Jefferson was sentenced to 120 months of imprisonment as to Count One; 360 months as to Count Two, concurrent to the sentence imposed in Count One; and 60 months as to Count Three, consecutive to the sentences imposed in Counts One and Two, for an aggregate sentence of 420 months.

No. 09-11168

## II.

Jefferson raises six issues on appeal.[2]  First, he argues that the district court erred by denying his request for a jury instruction that the "mere presence" of a firearm was insufficient to find him guilty of violating Section 924(c). Second, Jefferson contends that during voir dire his right to a fair trial was compromised by prosecutorial comments about the depiction of forensic evidence on television shows.  Third, Jefferson contends the district court committed plain error by allowing the prosecutor during voir dire to ask potential jurors about their willingness to reach a guilty verdict without DNA evidence.  Fourth, Jefferson contends that the prosecutor's comments during closing deprived him of a fair trial.  Fifth, Jefferson contends that the district court erred in admitting the evidence that he had been previously convicted for possession with intent to distribute methamphetamine.  Finally, Jefferson contends that the district court erred in sentencing him under 18 U.S.C. § 924(c) because he was also subject to a longer mandatory minimum sentence under a separate statute. We consider each of these issues below.

## A.

Jefferson contends that the district court abused its discretion when it did not instruct the jury that the "mere presence" of a firearm is insufficient to find a defendant guilty under 18 U.S.C. § 924(c).  Jefferson proposed that the following language be included in the jury instruction with regard to the Section 924(c) count:

> To prove the defendant possessed a firearm 'in furtherance,' the
> government must prove that the defendant possessed a firearm that

---

[2] Jefferson also raises a seventh issue on appeal only to preserve it for further review. He argues that the district court erred by refusing to instruct the jury that the defendant must have *known* that he possessed more than fifty grams of cocaine base.  He concedes that this issue was considered, and his argument rejected, in *United States v. Betancourt*, 586 F.3d 303 (5th Cir. 2009).

furthered, advanced, or helped forward the drug trafficking crime.
This requires more than mere presence of a firearm at the scene.

The district court included the first sentence of Jefferson's proposed instruction in the jury instructions, but did not include the second sentence.

During deliberations, the jury sent a note to the district court judge, asking "What does the language 'in furtherance of such a crime' mean?" The judge asked the parties to advise him on how they would like him to respond to the jury note. After the government's response, the defense objected and had the following exchange with the district court judge:

| | |
|---|---|
| Defense Counsel: | Your Honor, I would like to leave the instructions as they are. I would tell the jury that they have been instructed. However, I would like to note that I submitted additional language for this proposed instruction. It was one of the instructions that the Court overruled and that the language was this requires more than mere presence of a firearm at the scene, and I gave a case cite for that, and that seems to be directly responsive to the questions posed by the jury. |
| Judge: | Okay. So instead of I told you so, what is your proposal that I tell the jury? You want me to tell them that Mr. Nicholson submitted a response that he believes would have cleared this up, but I overruled him? Is that what you're asking?" |
| Defense Counsel: | No, Your Honor. . . . to the extent the Court answers a specific question posed by the jury, I think that this would be the answer. But my preference is for the Court to advise the jury, you have been given your instructions. There is nothing else for me to provide to you, and that's the way that it is. |

R. at 779-80.

The defense counsel's agreement to the instruction constitutes a waiver. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1939). A waiver "occurs by an affirmative choice by the defendant to forego any remedy available to him, presumably for real or perceived benefits resulting from the waiver."

No. 09-11168

*United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002). By requesting that the court "leave the instructions as they are" Jefferson's counsel demonstrated the requisite intention of forgoing the issue. Accordingly, "the district court cannot be said to have erred by failing to override the intentions of the defendant's counsel by asserting the right *sua sponte*." *United States v. Reveles*, 190 F.3d 678, 683 (5th Cir. 1999). We therefore hold that Jefferson's counsel waived the argument that the district court erred by not including the mere presence instruction in the jury charge.[3]

B.

Jefferson contends that the district court abused its discretion by allowing the following exchange, over his counsel's objections, during voir dire:

Prosecutor: How many folks in here watch CSI? How many of you believe everything you see on CSI? No. You know, it is funny. Those folks, they are so good.

Defense Counsel: Objection . . . . This is not a question designed to determine suitability of a juror, but rather than to make an excuse for lack of evidence –

Judge: Overruled.

Prosecutor: Folks, on CSI those folks are so good that they can get fingerprints off running water and they can wrap up a whole conviction and everything within an hour, including commercials. We all know that is not the real world.

Defense Counsel: I repeat my objection. It is quasi expert testimony.

Judge: Overruled.

---

[3] We should observe, however, that if a party requests a "mere presence" charge, we see no reason it should be denied—it only serves to clarify the jury's understanding of "in furtherance."

No. 09-11168

The manner in which a district court conducts voir dire is reviewed for abuse of discretion. *United States v. Munoz*, 150 F.3d 401, 413 (5th Cir. 1998). Prosecutorial misconduct, including impermissible statements during jury voir dire, is analyzed in two steps: (1) whether the prosecutor made an improper remark; and (2) whether the prosecutor's remarks prejudiced the defendant's substantive rights by casting serious doubt on the correctness of the jury verdict. *United States v. Valencia*, 600 F.3d 389, 409 (5th Cir. 2010). As suggested above in the quoted objection, Jefferson argues that the prosecutorial rhetoric constituted "quasi expert testimony" from a non-qualified witness. We find that the prosecutor's statements were those of a lay person, as evidenced by his statements "*we all know that* is not the real world" and "they can wrap up a whole conviction and everything within an hour." Accordingly, the prosecutor's remarks were not impermissible and the district court did not abuse its discretion by allowing them.

## C.

Jefferson further contends that the district court erred by allowing the prosecutor to ask potential jurors whether they would require scientific evidence to return a guilty verdict. He suggests that, by doing so, the prosecutor improperly committed the potential jury members to finding Jefferson guilty without scientific evidence during this exchange. Because Jefferson did not preserve the error through timely objection, we review for plain error. Plain error exists when: (1) there was an error or defect; (2) the legal error was clear or obvious, rather than subject to reasonable dispute; and (3) the error affected the defendant's substantial rights. *United States v. Juarez*, 626 F.3d 246, 254 (5th Cir. 2010).

It is improper for a prosecutor to "in effect ask[] the jury how it would weigh evidence it had not heard." *United States v. Fambro*, 526 F.3d 836, 848

8

(5th Cir. 2008) (internal quotation marks and citation omitted).  A prosecutor may, however, use voir dire to "discern[] bias or prejudice in prospective jurors." *Sandidge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 258 (5th Cir. 1985).  "The principle distinguishing proper from improper inquiry on voir dire is that examination cannot search the result of a case in advance."  *Id.*  Although hypothetical scenarios mirroring the facts of the case are "highly suspect," *Fambro*, 526 F.3d at 848, questioning prospective jurors about weighing of a particular type of evidence—like the issue of forensic evidence, as is at issue here—seems to be a closer call.  *See Sandidge*, 764 F.2d at 258.

Regardless of whether the prosecutor erred by asking about the scientific and DNA evidence, the error was not clear.  We have previously noted that we were "unaware of any decision by the Supreme Court or any federal appellate court that has reversed a district court because it allowed commitment questions on voir dire." *Fambro*, 526 F.3d at 848.  Accordingly, any error was not clear or obvious in the light of the precedent of our circuit.  We therefore affirm the district court on this point.

### D.

Jefferson contends that the prosecutors made improper arguments during closing arguments.  There are four sets of comments about which Jefferson complains: (1) comments discussing the testifying law enforcement officers' jobs, military experience, and unimpeached credibility; (2) additional comments during rebuttal about the officers' police and military experience; (3) an assertion that the defendant wanted the jury to believe that evidence had been planted, an argument which had not been raised by the defendant; and (4) a statement that Jefferson had reached "the all time new low for criminal defense 101" by blaming his dead mother.

No. 09-11168

Because Jefferson did not object to these comments at trial, we review for plain error. *United States v. Castro-Trevino*, 464 F.3d 536, 541 (5th Cir. 2006).

1.

We begin by noting that the district court committed plain error by permitting the prosecutor's repeated comments regarding the witnesses and their military experience, which served to bolster the credibility of law enforcement officials who testified against Jefferson. During closing argument, the prosecutor drew specific attention to the fact that "[e]ach of the officers who testified served in the military. All of them served in the Marines or in the Army, and three out of five of them have done tours in Iraq." In the context of his argument, there would seem to be little reason to single out this fact except to bolster the credibility of the prosecutor's witnesses. During rebuttal, however, the prosecutor left no doubt but that bolstering his witnesses was the purpose of this theme; saying:

> [E]very one of those officers is a seasoned veteran with the Dallas Police Department who takes an oath to uphold the law and protect the citizens of this city.
>
> And in fact, every single one of them, every single one of them, has served honorably in the military, and in fact, three out of the five have served in Iraq. Do those people strike you as being the kind of person who are of character to lie? Deceive? Cheat? No. No. Absolutely not.

We have made clear that prosecutors may not bolster the credibility of law enforcement officials by saying that they should be believed because they are doing their job. *United States v. Gracia*, 522 F.3d 597, 601 (5th Cir. 2008). "[I]t is particularly improper, indeed, pernicious, for a prosecutor to seek to invoke . . . the sanction of the government itself as a basis for convicting a criminal defendant." *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999) (internal citations omitted).

No. 09-11168

The district court also plainly erred by permitting the prosecutor to contend that the defendant wanted the jury to believe that the police framed him. The prosecutor said:

> Folks, those officers, do you think that they went in there and just planted all this dope? Apparently that's a seed that he wants you to somehow think is going to sprout. Folks, we know that's not the case.

Jefferson correctly contends that it is improper for a prosecutor to suggest that the jury would have to believe in a conspiracy to frame him when he did not present such a conspiracy defense. In *United States v. Dorr*, the court noted that the prosecutor's closing argument could question the reasonableness of a conspiracy only to the extent that such a conspiracy was presented by defense counsel. 636 F.2d 117, 119-21 (5th Cir. 1981). Accordingly, this statement was improper.

The prosecutor also engaged in an improper argument when he said that Jefferson had reached "the all time new low for criminal defense 101" by blaming his dead mother for the crime. A prosecutor should not use closing argument to demean the character of the defendant for reasons other than the crime for which he is on trial. Although the prosecutor could have properly referred to Jefferson's dishonesty, relating to his mother's present occupancy of the apartment, as evidence of knowledge and guilt, he crossed the boundary of propriety by claiming Jefferson fouled the memory of his deceased mother. *See United States v. Mendoza*, 522 F.3d 482, 495 (5th Cir. 2008) ("efforts to inflame jurors through argument that characterizes a defendant in the most despicable manner will be seen as creating a high risk of prejudice.").

2.

Our precedent clearly indicates that comments like those made by this prosecutor constitute error that is clear and obvious. In the recent case of

11

No. 09-11168

*United States v. Raney*, we "state[d] clearly and unequivocally that these types of remarks and arguments are improper." *United States v. Raney*, 633 F.3d 385, 396 (5th Cir. 2011).[4] We further noted that "the government has been cautioned repeatedly by this court against making such arguments, yet we continue to face them on appeal," *id*. at 395, and "[d]espite our precedent clearly condemning such remarks, the government continues to disregard our admonishments." *Id*. at 396.

3.

Our focus thus becomes whether the prosecutor's improper comments affected Jefferson's substantial rights. To determine this question, we assess "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *United States v. Tomblin*, 46 F.3d 1369, 1389 (5th Cir. 1995) (internal quotation marks and citations omitted). "The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *United States v. Holmes*, 406 F.3d 337, 356 (5th Cir. 2005) (internal quotation marks and citation omitted). The crucial inquiry is the strength of the evidence of guilt, minus the officer's testimony. If "absent the jury's crediting of the

---

[4] The *Raney* court described the improper statements and related objections, saying:

> First, in reference to the firearm found on Raney, the prosecutor stated that "[t]he gun was loaded, a round in the chamber, ready to be fired. Bang, bang, bang." Raney did not object. Next, the prosecutor told the jury that "Jasmine Raney's testimony . . . directly accus[ed] the officers of lying to you [and] planting evidence." Raney objected. The district court sustained the objection and issued a curative instruction. Finally, the prosecutor asked the jurors to decide whether the police officers had a motive to "tell something other than truth," and indicated that they did not by asking "[w]ere the officers going to put their careers on the line?" Raney objected. The district court sustained the objection and issued a curative instruction.

*Raney*, 633 F.3d at 394.

agents' testimony [Jefferson] could not have been found guilty beyond a reasonable doubt on the paucity of other evidence" then we are compelled to reverse. *Gracia*, 522 F.3d at 604. If, however, there "is substantial evidence pointing to his guilt," that weighs against reversal. *United States v. Ramirez-Velasquez*, 322 F.3d 868, 875 (5th Cir. 2001).

The government's case was in part presented as credibility choices between law enforcement witnesses and Jefferson's only witness, Coleman. We have earlier noted the truth of the police testimony was contested in several respects by the testimony of Jefferson's girlfriend Sarah Coleman, who testified that she had been present during all relevant events. Coleman refuted that: (1) three people entered and exited Apartment 110 in a short period of time; (2) Jefferson retrieved his identification from the apartment; (3) Jefferson had keys either to the apartment or to the locked bedroom in which the contraband was found; (4) police could have heard keys jingle when Jefferson reentered the apartment; (5) Jefferson gave his sister the keys that she gave police officers to open the locked bedroom; (6) Jefferson consented to signing the search form; and (7) Jefferson made a remark indicating that the safe in the room where the drugs were found was his. *See* R. at 702; 705; 703; 707; 694; 706; 695. These facts are all related, directly or indirectly, to the disputed element of the crime—that Jefferson exercised dominion over the apartment and bedroom and hence the contraband.

Because credibility choices between police testimony and Jefferson's witness were highly relevant to Jefferson's guilt, the procedural due process underlying a fair trial requires that, in determining Jefferson's guilt, the testimony of the police obligating the jury to make credibility choices must be excluded because the credibility of that testimony was improperly bolstered by prosecutorial remarks. *See United States v. Aguilar*, __ F.3d __ , 2011 WL

No. 09-11168

2481592, *3-*6 (5th Cir. 2011); *Raney*, 633 F.3d at 394-95; *Gracia*, 522 F.3d at 601; *Gallardo-Trapero*, 185 F.3d at 320.[5]

After the police officer's contested testimony is excluded from the record, the next and crucial question is whether there is substantial remaining evidence allowing a reasonable jury to return a guilty verdict. *Ramirez-Velasquez*, 322 F.3d at 875. To aid this analysis, we recount the evidence of Jefferson's guilt that does not require the jury to make credibility choices between police witnesses and Coleman: (1) cocaine and a firearm were found in the apartment; (2) Jefferson and Coleman were alone in the apartment with the contraband; (2) Jefferson's name was on the lease of the apartment; (3) when questioned by the police, Jefferson lied about his mother being the occupant of the apartment and being at work at a hospital when she had been dead for four months;[6] (4)

---

[5] We can appreciate the frustration of the law enforcement officers who work hard to prove a case only to have their testimony excluded because of a prosecutor's improper remarks, especially when our case law makes clear that such remarks are improper.

We believe that *Berger v. United States* is instructive here:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

295 U.S. 78, 88 (1935) overruled on other grounds, *Stirone v. United States*, 361 U.S. 212 (1960).

[6] The transcript reflects the following exchange between the prosecutor and Coleman:

Prosecutor:  And in fact, the police officers came outside and told him -- asked him about who did that bedroom belong to, didn't they?
Coleman:  Yes.

No. 09-11168

Jefferson's photograph, the sunglasses in which he was photographed, and a fresh-looking plate of spaghetti were found in the bedroom with the contraband; (5) a carbon-copy receipt of a money order dated November 6, 2008 made out to the Texas Department of Corrections, bearing Jefferson's name and reflecting his address as Apartment 110 were found in the room with the contraband; (6) the police officers found $1,361 on Jefferson's person; (7) Jefferson attempted to flee from the police;[7] and (8) Jefferson was previously convicted of drug charges.[8]

In the light of this substantial evidence, "pointing to his guilt," *see Ramirez-Velasquez*, 322 F.3d at 875, which need not be excluded from the jury's consideration, we hold that a reasonable jury could have concluded beyond a reasonable doubt that Jefferson was guilty as charged. A jury would have had before it that (1) Jefferson's name was on the lease for that apartment; (2)

---

Prosecutor:   And in fact, he told them that that bedroom belonged to his mother, didn't he?
Coleman:      Yes.
Prosecutor:   Even though that his mother had been dead for almost four months?
Coleman:      Uh-huh.
The Court:    Is that a yes?
Coleman:       Yes.
Prosecutor:   Okay. Now, in fact, he told the police that his mother worked at Parkland Hospital? Yes?
Coleman:      Yes.

[7] "While flight alone is insufficient to support a guilty verdict, it is relevant and admissible, and the jury could take into account [the defendant's] flight." *United States v. Lopez*, 979 F.2d 1024, 1030 (5th Cir.1992).

[8] Although the facts are uncontested, Coleman offered explanations for why Jefferson has his name on the lease (because his mother had difficulty traversing the stairs necessary to pay rent); the photographs of Jefferson in the bedroom (they belonged to Jefferson's mother); and the reason Jefferson had money (his sister gave it to him to purchase a car). Despite these explanations, the fact that Jefferson's name was in fact on the lease, his photographs were in fact in the bedroom, and that he was in fact carrying $1,361 on his person are uncontested. The jury was free to disregard Coleman's explanations. Even though we have eliminated testimony presenting credibility choices between Coleman and the police concerning their respective conflicting testimony, we, of course, have not held that the jury must necessarily have found Coleman's testimony, itself, credible.

Jefferson and his girlfriend were alone in the apartment where substantial and valuable drugs were found; (3) a plate of spaghetti that appeared fresh was in the room where the drugs were found, indicating that the room had been occupied shortly before the search; (4) Jefferson's sunglasses, his pictures, and recent receipts bearing his name were in the room where the drugs were found; (5) in denying that it was his room, Jefferson lied, saying that it was his mother's room, which, because she had been dead for four months, meant that there was little explanation for his personal items to be in the room, which included a receipt bearing a date of a week earlier; (6) Jefferson had a large amount of cash on him; (7) Jefferson attempted to flee the scene; (8) and finally the jury could have considered his previous drug conviction as evidence of intent with respect to the drugs that were found.  Accordingly, we hold that Jefferson's substantial rights were not affected by the improper comments made by the prosecutor during closing arguments under the plain error standard.

### E.

As we have just noted above, Jefferson had a previous drug conviction. Jefferson, however, contends that the district court erred in admitting the evidence that he had been previously convicted for possession with intent to distribute methamphetamine.  We review a district court's admission of evidence for abuse of discretion, which is heightened when the alleged error involves Rule 404(b).  *See United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008).  Federal Rule of Evidence 404(b) specifies that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but specifies that prior convictions are admissible "for other purposes, such as a proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b).  To determine whether evidence is admissible under Rule 404(b),

extrinsic evidence must: (1) be relevant to an issue other than the defendant's character; and (2) have probative value that is not substantially outweighed by undue prejudice and meet the other requirements of Rule 403. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

The district court admitted into evidence Jefferson's prior conviction to show knowledge and intent to possess contraband. The court held that Jefferson's knowledge and intent were called into question by his not guilty plea and by the testimony of Sarah Coleman, to the effect that the drugs did not belong to Jefferson. Courts can admit evidence that speaks to the element of intent to commit a crime, which may include evidence of prior felony convictions, *see* FED. R. EVID. 404(B); such evidence may "lessen[] the likelihood that [the defendant] committed the charged offense with innocent intent or lack of knowledge." *United States v. Charles*, 366 F. App'x 532, 538 (5th Cir. 2010) (unpublished).

The court, however, must also consider whether the probative value of his previous conviction in proving intent substantially outweighs undue prejudice to the defendant, and meets the other requirements of Rule 403. This factor is judged by "[comparing t] he overall similarity of the extrinsic and charged offenses, and the amount of time that separates the extrinsic and charged offenses as well as any limiting instructions. *United States v. Cockrell,* 587 F.3d 674, 678 (5th Cir. 2009) (internal quotation marks and citation omitted).

Jefferson argues that the conviction had diluted probative value because it occurred eight years before the instant offense. That argument is not persuasive, however, when the previous crime is of the nature of the crime that is charged. *See, e.g., United States v. Chavez*, 119 F.3d 342, 346-47 (5th Cir. 1997) (allowing the introduction into evidence of a fifteen-year-old conviction of

the same type of crime to show intent).  Furthermore, the district court gave a limiting jury instruction that:

> You must not consider any of this evidence in deciding if the defendant committed the acts charged in the indictment . . . .  If you find beyond a reasonable doubt from other evidence in this case that the defendant did commit the acts charged in the indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine whether the defendant had the state of mind, intent, or knowledge necessary to commit the crimes charged in the indictment.

Based upon the similarity of the offenses and the limiting instructions, we hold that the district court did not err by admitting into evidence Jefferson's previous conviction for possession with intent to distribute methamphetamine.

## F.

Finally, Jefferson contends that the district court erred in sentencing him under 18 U.S.C. § 924(c) because he was also subject to a longer mandatory minimum sentence under a separate statute.  After Jefferson's brief was filed, the Supreme Court decided this issue in *Abbott v. United States*, 131 S. Ct. 18 (2010).  In *Abbott*, the Court unanimously held that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction."  *Id*. at 23.  We apply the Supreme Court precedent established in *Abbott*, and hold that the district court did not err in imposing a sentence for Jefferson's violation of § 924(c) in addition to the longer sentence imposed under § 841.

No. 09-11168

III.

We recapitulate the holdings in this opinion, that: (1) Jefferson waived his argument that the district court erred by denying a "mere presence" jury instruction; (2) the prosecutor's comments about the depiction of forensic evidence on television shows were not in error; (3) the district court did not plainly err by allowing the prosecutor to ask potential jurors about their willingness to reach a guilty verdict without DNA evidence; (4) although the prosecutor made improper remarks bolstering police testimony during closing arguments, there was sufficient evidence for the jury to reasonably find Jefferson guilty based upon the testimony remaining after contested police testimony was excluded; (5) the district court did not err by admitting into evidence Jefferson's previous conviction for possession with intent to distribute methamphetamine; and (6) the recent Supreme Court decision in *Abbott* forecloses Jefferson's argument that the district court erred in sentencing him under 18 U.S.C. 924(c) because he was also subject to a longer mandatory minimum sentence under a separate statute.

None of the six errors alleged by Jefferson reaches the standard of reversible error. Therefore, for the reasons set forth above, the judgment of the district court, in all respects, is

AFFIRMED.