*935 JENNIFER WALKER ELROD, Circuit Judge,
concurring in part and concurring in the judgment:
A jury convicted Donald and Tonya Womack and I agree that we must affirm its verdict. I also agree with much of the reasoning of the majority opinion and join that opinion except for Part III. I write separately because I would hold that the government’s closing argument went well beyond the evidence admitted at trial and thus was plainly improper. We must affirm because the trial record contains ample evidence of guilt. Still, the government’s improper remarks are troubling, especially in light of our many recent reminders to prosecutors to stick to the evidence during closing arguments.[1]
It is well-settled that “[a] prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence.” United States v. Vargas, 580 F.3d 274, 277-78 (5th Cir.2009). Here, the government transgressed this limitation in two important ways.
First, the government improperly used the fake mileage logs evidence against Mrs. Womack during its closing argument — not just once, but twice.[2] These remarks were improper because, as the majority opinion correctly concludes, the false mileage logs were evidence only of Mr. Womack’s intent, not Mrs. Womack’s.
Second, the government repeatedly insinuated in its closing that the Womacks were engaged in a large-scale fraud far beyond the 25 fraudulent tax returns introduced at trial — despite assuring the district court that it would not and that it lacked the evidence to do so. The Wom-acks filed a pre-trial motion requesting funds for an expert to testify that the vast majority of returns they prepared were honest and accurate. After a lengthy hearing, the district court denied the motion. But the district court conditioned its *936 denial on the government’s representation — as “an officer of the court” — that it would not argue that the thousands of returns outside of its investigation were illegal. Indeed, the government told the district court that it did not even have the evidence to support such an argument. At trial, the government put on evidence of 25 false returns. In its closing, however, it repeatedly suggested that those 25 returns were just a sampling of thousands more false returns, as the following closing argument excerpts reveal:[3]
• “The way to make money at this operation is a volume business. You get them in, you charge them $150, you run up how many thousands of returns you can do in a year.... It gets worse than that. The only way you can churn them out like that is if you cookie-cutter, churning out the same Schedule A and the same Form 2106 over and over again, just tinkering a little bit with the numbers. That’s how you are [sic ] make money. It’s not the bald way. It’s the sneaky way, the dishonest way.” (Emphasis added).
• “Together, [the Womacks] operated this business, and together they bene-fitted from their fraud. That’s how they built their business, and they took home the income from their business at the end of the day.” (Emphasis added).
• “The benefit to the Womacks were happy customers, repeat business.... [T]his was a way for the Womacks to build the clientele, build revenue, get people in the door, get people coming back next year. And because of this, of course, they obtained a competitive advantage. Their competitors in the tax preparation field, imagine being an honest tax preparer trying to build a clientele. The honest tax preparer can’t promise a large refund every year.” (Emphasis added).
• “If you do a little simple math that they prepared 3,000 returns a year and charged approximately $150 per return, that comes out to a revenue of over — about $450,000. For a small business, that’s a lot of money. And we know that some of that money went into the swimming pool in the backyard of the Womacks’ home.”
• “As husband and wife they ran this business, as husband and wife they were there in the business day in and day out. As husband and wife they reap the reward. As husband and wife they spent the money and lived the life.”
These statements are not vague, as the majority opinion would have it. They plainly suggest, again and again, that fraud permeated the Womacks’ tax preparation business, although the government had assured the court and defense counsel that it would not do this. These remarks were clearly improper.
But our appellate review does not end here. “[W]hether the prosecutor’s remark was legally improper” is only the first step in reviewing an improper closing argument claim. United States v. Mendoza, 522 F.3d 482, 491 (5th Cir.2008). Second, we ask “whether the remark ‘prejudiced the defendant’s substantive rights.’ ”[4] Id. (quoting United States v. Morganfield, 501 F.3d 453, 467 (5th Cir.2007)). In making this prejudice determination, we consider “(1) the magnitude of the statement’s prejudice, (2) the effect of any cautionary in *937 structions given, and (3) the strength of the evidence of the defendant’s guilt.” Raney, 633 F.3d at 394 (internal quotation marks omitted).
Applying this three-factor prejudice standard, reversal is unwarranted. As for the false mileage logs testimony, the magnitude of prejudicial effect was high because the evidence was perhaps the most damning mens rea evidence presented at trial. But the district court issued a cautionary instruction and, more importantly, the trial record contains ample evidence of Mrs. Womack’s guilt. The jury heard the testimony of numerous Front Door customers that the Womacks repeatedly claimed the same itemized deductions for their customers, regardless of the customer’s individual financial situation. The jury also heard the testimony of Special Agent Rosalez, that when he visited Front Door undercover, posing as a customer, a receptionist asked him if he would like a refund of $3,200, $3,500, or $4,200, and explained that the larger the refund he selected, the longer he would have to wait. He selected $4,200, paid an up-front fee of $148, and left. He later received from Front Door a tax return that yielded a $4,200 refund. It is rather incredible that Tonya could have been unaware of this practice while working in Front Door’s small office. Having weighed the pertinent prejudice factors, I cannot conclude that the government’s improper comments about the mileage logs “cast[] doubt on the correctness of the jury verdict.” Vargas, 580 F.3d at 278.
Nor was there prejudice on the basis of the government’s remarks about the Wom-acks being engaged in a large-scale fraud. The first two prejudice factors weigh in favor of reversal because the prejudicial effect was high and no cautionary instructions were issued. But the evidence of guilt was strong enough that the prosecution’s improper remarks do not undermine confidence in the verdict.
For the foregoing reasons, I respectfully concur in part and concur in the judgment.

. This circuit has confronted too many improper closing arguments in recent years. See, e.g., United States v. Jefferson, 432 Fed.Appx. 382, 389-93 (5th Cir.2011) (unpublished) (clearly improper prosecutorial remarks did not affect substantial rights given other evidence of guilt); United States v. Aguilar, 645 F.3d 319, 322-27 (5th Cir.2011) (reversing on plain error review due to improper remarks); United States v. Raney, 633 F.3d 385, 395-96 (5th Cir.2011) (per curiam) (reversing on other grounds but noting that ‘‘[d]espite our precedent clearly condemning such remarks, the government continues to disregard our admonishments”); United States v. Pittman, 401 Fed.Appx. 895, 898-901 (5th Cir.2010) (unpublished) (clearly improper remarks did not affect substantial rights); United States v. Gracia, 522 F.3d 597 (5th Cir.2008) (reversing on plain error review due to improper remarks).
Although the government quibbled at oral argument as to whether its closing remarks were improper, it unquestionably should have known that it was inappropriate to refer to items that were not in evidence and that it told the court it would not use. It has long been recognized as "verboten” for a prosecutor to "directly refer to or even allude to evidence that was not adduced at trial.” United States v. Murrah, 888 F.2d 24, 26 (5th Cir.1989) (citing United States v. Morris, 568 F.2d 396 (5th Cir.1978)). As the Supreme Court put it more than 75 years ago: "[WJhile [the United States Attorney] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

. One of the Womacks’ former customers, Robert Walenta, testified at trial that the IRS informed him in 2007 that he owed thousands of dollars related to tax returns prepared by Front Door. Mr. Walenta contacted Mr. Wom-ack, who gave him two amended tax returns with falsified mileage logs attached to submit to the IRS. This "other acts” evidence was admissible under Rule 404(b)(2) as evidence of Mr. Womack’s intent, but it was not admissible against Mrs. Womack.

. The majority opinion only quotes some of these excerpts.

. When, as here, our review is for plain error, this second step "overlaps with the third prong of plain error review.” Vargas, 580 F.3d at 278.