# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-41136

United States Court of Appeals
Fifth Circuit

**FILED**

January 30, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GAMALIEL DELIRA-VILLARREAL,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CR-51-1

Before JONES, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Gamaliel Delira-Villarreal appeals the district court's denial of his motion for a new trial following his jury trial conviction for possession with intent to distribute marijuana. Delira-Villarreal contends that his conviction should be reversed because the Government violated his Fifth Amendment rights under *Doyle v. Ohio*, 426 U.S. 610 (1976), by commenting on his silence upon arrest during its closing argument. Applying plain error review, we

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-41136

conclude that even if the Government committed a *Doyle* violation, it did not affect his substantial rights and AFFIRM.

I

Delira-Villarreal was arrested in December 2014 when border patrol agents at the Falfurrias Border Patrol checkpoint in Texas discovered marijuana hidden in the back of the van that he was driving. When Delira-Villarreal pulled up to the checkpoint, a Border Patrol dog alerted its handler to something inside the van, and Border Patrol agents directed Delira-Villarreal to a secondary inspection area. While agents inspected the van, Delira-Villarreal gave evasive and inconsistent answers to questions about his business in Texas and his employer. His tools were scattered haphazardly throughout the back of the van where the agents discovered approximately fifty bundles of marijuana concealed behind some shelving units. Delira-Villarreal remained silent when placed under arrest and read his *Miranda*[1] rights.

Pending trial, Delira-Villarreal was detained at the Brooks County Detention Center, where he was aware that his telephone calls were monitored and recorded. At the Government's request at trial, the detention facility produced recordings of Delira-Villarreal's calls, and excerpts were played and transcribed for the jury in which he discussed how the border patrol dog had "caught" him and made other inculpatory statements that suggested that the drugs hidden in the van were his.

The agent that placed him under arrest and read him his *Miranda* rights also testified. Under direct examination by the prosecution, he described those events as follows:

> Q. Now, before you placed him under arrest, did you tell him why you were placing him under arrest?

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

A. At that time, I believe we didn't until before we read his *Miranda* rights.

Q. Oh . . . you didn't inform him of what . . . he was being arrested until after you gave him his rights?

A. No, no. Before we read him his *Miranda* rights, we let him know why he was being under arrest.

Q. Okay. And when your – so what was his demeanor when you were telling him that – what did you tell him?

A. I just told him he was being placed [under arrest] for narcotics being in his vehicle, for possession of marijuana.

Q. Okay.

A. And there was no demeanor. There was no nervousness, just – no outbursts or as questioned as to why or it's not mine or anything. He was just quiet.

During closing argument, the Government urged the jurors to consider Delira-Villarreal's lack of response when he was arrested as evidence that he knowingly possessed a controlled substance. The prosecutor said:

> So the only element really in question here is whether or not the Defendant knowingly possessed a controlled substance. . . . That when the Defendant was arrested and he was told what he was being arrested to – for, he turned around. He made no commotion. He showed no outbursts, no "What do you mean? What are you talking about? How can that be?" Nothing, he just turned around.

In closing, the defense maintained that the Government had failed to prove Delira-Villarreal's knowledge that there were drugs in the van he was driving beyond a reasonable doubt. During rebuttal, the prosecutor described Delira-Villarreal's initial statements as evasive, and then she again referred to his post-arrest silence:

> [W]hen they told him he was being arrested for marijuana, he had no emotion. Do you think that somebody who didn't know is not going to say, "What do you mean there's marijuana in my vehicle? What? Who did this? I can't believe this." No show of emotion, no outbursts, no anger, no disgust, nothing. You tell me when someone who didn't know that there was marijuana in the vehicle that you were driving tells you that there is marijuana in there and you have absolutely no reaction? Is that – does your reason

and your common sense tell you that that is the reaction that someone is going to have?  No.

The prosecutor closed with a discussion of the value of the contraband and Delira-Villarreal's recorded conversation.  Delira-Villarreal's criminal trial and jury deliberation lasted one day, and the jury found him guilty as charged.

Delira-Villarreal filed a motion for a new trial alleging that the prosecutor violated *Doyle* during her closing and rebuttal arguments.  After conducting a hearing, the district court found, although the prosecution's statements were likely improper, the substantial evidence of guilt, such as his evasive answers, the presence of his tools in the van, and his inculpatory phone calls, rendered the error harmless, and therefore denied his motion.  Delira-Villarreal appealed.

## II

Plain error review applies because Delira-Villarreal did not object contemporaneously at trial.  To show plain error, a defendant must show (1) a forfeited error, (2) that is clear or obvious, and (3) that affects his substantial rights.  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  If he discharges that burden, we may exercise our discretion "to remedy the error . . . if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id.* (internal quotation marks and citation omitted; brackets in original).

In *Doyle v. Ohio*, the Supreme Court held "that the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause."  426 U.S. at 619.  The Court explained that "while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings."  *Id.* at 618.  The Court concluded

that because of this implicit assurance, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.; see also Wainwright v. Greenfield,* 474 U.S. 284, 290 (1986) ("The source of the unfairness was the implicit assurance contained in the *Miranda* warnings 'that silence will carry no penalty.'" (internal citations omitted)).     However, commenting on a defendant's silence prior to receiving the *Miranda* warnings, even if post-arrest, is permissible for impeachment purposes. *Fletcher v. Weir*, 455 U.S. 603, 606-07 (1982) (*Doyle* does not prohibit the Government from commenting on a defendant's post-arrest, but pre-*Miranda* warnings, silence).

III

Although the record is unclear as to whether the prosecutor referred to Delira-Villarreal's pre- or post-*Miranda* silence, even if there was a *Doyle* error, Delira-Villarreal has not demonstrated that it affected his substantial rights.   Delira-Villarreal claims that he did not know the drugs were in the van.    His version of events is not completely implausible and there is substantial evidence of his guilt; therefore we must examine the "facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of the defendant's guilt." *United States v. Shaw,* 701 F.2d 367, 383 (5th Cir. 1983) (quoting *United States v. Meneses-Davila,* 580 F.2d 888, 890 (5th Cir. 1978)).   We "have declined to reverse even where the exculpatory story is not totally implausible but the evidence of guilt is substantial or overwhelming." *United States v. Martinez–Larraga,* 517 F.3d 258, 269 n.10 (5th Cir. 2008).

The Government's statements during closing argument went to the heart of the defense's case regarding knowledge, but there was substantial evidence presented at trial of Delira-Villarreal's knowledge: Delira-Villarreal provided

contradictory answers when asked the purpose of his trip to Texas and his employer's identity; his own tools were found on the shelving system that concealed the marijuana; and Delira-Villarreal placed an inculpatory telephone call while detained following arrest in which he discussed how he was caught by the dog and that the drugs were his. This evidence supports the Government's argument that the *Doyle* violation did not affect the outcome of the district court proceedings. In *United States v. Vargas*, we held that even if there had been a *Doyle* violation, the prosecution's comments were limited to a few moments during closing arguments and therefore did not affect the fundamental fairness of the trial where there was ample evidence for a conviction. 580 F.3d 274, 279 (5th Cir. 2009). And in *United States v. Salinas*, we affirmed the district court where the Government had introduced sufficient evidence to rebut the defendant's exculpatory story at trial, making any *Doyle* violation harmless. 480 F.3d 750, 760 (5th Cir. 2007). We conclude that Delira-Villarreal has not demonstrated that his substantial rights were affected by the *Doyle* violation as required under plain error review. *See Puckett*, 556 U.S. at 135.

IV

Accordingly, the district court's judgment is AFFIRMED.